The Court now will proceed to the court case, Stanbridge v. Scott. Ms. Bodine? Good morning, Your Honors, and may it please the Court. My name is Katie Bodine, and I'm a third-year law student at Notre Dame, here under the advisement of Bob Palmer. I represent the appellant, Mr. Kevin Stanbridge, in this matter. We respectfully ask that this Court reverse the finding of the District Court that it did not have subject matter jurisdiction over Mr. Stanbridge's habeas claim. There are two issues before the Court this morning. First, Mr. Stanbridge is in custody despite the expiration of his criminal sentence because it served as a necessary predicate to his current civil confinement, and that confinement is more than a negligible effect on his physical liberty. Second, the comments by the prosecutor on closing argument were improper because they so infected the trial with unfairness so as to abridge Mr. Stanbridge's due process rights, and the comments taken both individually and as a whole were improper. Ms. Bodine, should we construe this petition as a challenge to Mr. Stanbridge's conviction for the aggravated sexual abuse or as a challenge to his current civil commitment? Your Honor, this is a challenge to his criminal sentence for the aggravated sexual abuse. Okay. You don't want us to construe this as a challenge to the civil commitment such that any later challenge would be barred as a successive petition? While that would be nice, Your Honor, it was waived by Mr. Stanbridge in his original petition for habeas claim, so it is not construed as a collateral attack on his sexually violent person's commitment. He has another pending proceeding, correct? No, he does not. Challenging the civil commitment? Not that I'm aware of, Your Honor. Thank you. This Court has been willing to find that if there was a sufficient nexus between the criminal sentence and a second or if there was a positable and demonstrable relationship or if there was an augmentation between the sentences, then there would be a custody characterization. However, that is different than the situation that we have here. Mr. Stanbridge's civil commitment requires a finding of three separate issues by the trial judge. First, that he was convicted of a sexually violent offense. Second, that he had a mental disorder. And third, that he is dangerous such that that is a side effect of his mental disorder. Therefore, Mr. Stanbridge would not be held in the civil commitment facility but for his sexually violent offense. And, in fact, the offense that is challenged here today is the only offense that could have been used by the Court because that is the only offense he has been convicted of. Moreover, this is greater than a collateral consequence, which has been defined by this Court as something that has a negligible effect on a defendant's physical liberty of movement. Here, Mr. Stanbridge has no liberty of movement and no freedom of movement. He is confined to the facility, and there are only two ways for him to be discharged from that facility. The first is through periodic reexamination by the doctors, and the second is through a petition for discharge or conditional release by Mr. Stanbridge. There's a high burden of proof there that he has to prove that he has been cured of his mental defect, which here is pedophilia. That's an incredibly high burden for him to prove, and therefore this is hardly a negligible effect on his physical liberty. Collateral consequences are things such as having to pay a fine or sex offender registration or suspension of a driver's license. But here, Mr. Stanbridge is indefinitely committed unless he can prove to both his doctors and to a court that he has been cured of his pedophilia. Mr. Stanbridge has also been continuously physically restrained throughout his post-conviction process. He served his seven-year sentence, he served his two years of mandatory supervisory release, and then he was put into SVP Act custody. This is different than other cases such as Mullane v. Cook, in which the petition was filed while the defendant was in custody for a third unrelated offense, and the second offense in which he was later sentenced to was only speculatively going to be abridged or enhanced by the initial sentence. Counsel, I think I understand the position here, but I'm not sure how we would reconcile your position with the Lackawanna County against Coss case, which I have understood, perhaps too simply, as saying that this sort of challenge to a collateral challenge to earlier convictions can be entertained only if the grounds was a failure to provide counsel for that earlier conviction. That is true, Your Honor, but we can differentiate this case from Lackawanna County in the sense that in Lackawanna County it was a sentencing enhancement case. So the second sentence was enhanced. Right, but why should we draw that kind of a difference? Because the difference here, Your Honor, is that it's an issue of judicial discretion. Under the SVP Act commitment, the judge doesn't have a discretion as to whether or not to consider the earlier criminal sentence. With a sentencing enhancement, it's just one of the aggravating factors that the judge can consider when choosing to enhance the second sentence. Here, the judge cannot civilly commit, Mr. Sandbridge, but for that criminal conviction. Well, we have the same problem under the Armed Career Criminal Act where mandatory minimum sentences are triggered by reason of the prior conviction. There's no discretion involved. That is true, Your Honor, but another distinction would be that Mr. Sandbridge is indefinitely held here. Even if under a statute where there is an enhanced sentence such as that, there is still a deadline for that defendant of which he can actually see in his future a time where he will actually be free. They are sometimes life sentences. That is fair, Your Honor. In this case, though, there is such a difficult burden of proof for Mr. Sandbridge to reach in that he has to prove that he has been cured of his pedophilia, that it is essentially a life sentence. And it is important to note that this was the only criminal conviction that could have been used for his Sexual Violence Persons Act commitment. There's also the distinction in this case in which the prosecutor had considered his Sexual Violence Persons Act commitment prior to him even being convicted of this sexual offense. There was a letter sent by the prosecutor to the Attorney General a year prior to the retrial in which Mr. Sandbridge was convicted of this crime and three years prior to his Sexual Violence Persons trial in which he noted that Mr. Sandbridge would be a good fit for Sexual Violence Persons commitment, despite the fact that he hadn't even satisfied one of the three prongs, which was conviction of a sexually violent offense. Why should we be troubled by the prosecutor's letter there? It's important because, Your Honor, in this case, the fact that the prosecutor had considered this indefinite civil commitment prior to the case actually occurring influences the way that the case went. It influenced the prosecutor. And it was the fact that that was considered early on in the case means that it was something that was intended to be more than simply an enhancement of his civil, of his criminal sentence. It was something that was considered early on. Well, one would hope that the prosecutor would believe that there was a strong case on the criminal charge. And if these other indications are present, wouldn't we expect a responsible prosecutor to consider that possibility? True, Your Honor. And one of the issues here is that the Sexual Violence Persons Act commitment is, in fact, a second trial, which is something that makes it a little more similar to our case law. But what differentiates it is the fact that the prosecutor had considered this commitment prior to the case even happening. So the prosecutor had considered this as more than just an augmentation or a sufficient nexus or a positive and demonstrable relationship. The criminal conviction is, in fact, a necessary predicate to his current confinement. And, therefore, Mr. Sambridge wouldn't be in his civil commitment but for that criminal conviction. Okay. Let me try coming at this a different direction. Are you telling us that our subject matter jurisdiction, in this case, depends upon when the prosecutor decided to consider the civil commitment possibility? That is but a small factor in what you should consider. Is it a factor at all? It is a minor factor when trying to differentiate from the prior case law, Your Honor. This is an unusual case in which not only Mr. Sambridge is committed under the Sexual Violence Persons Act but that it was considered early on and, therefore, was something that was even more of a necessary the criminal conviction was even more of a necessary predicate. As part of your briefing, if I recall, counsel, you all are very troubled by some evidence of communications you think were improper between the prosecutor and the judge. Did I understand that correctly? Yes. Could you just explain to us what happened or what evidence there is about that? Yes, Your Honor. During Mr. Sambridge's Sexual Violence Persons Act pretrial hearings, his Sexual Violence Persons Commitment Act appointed counsel discovered some faxes that were sent in between the trial judge and the prosecutor prior to the sentencing hearing that had fax stamps at the top which Before the criminal sentencing? Before the criminal sentencing, yes. But the documents were not made aware to Mr. Sambridge until his Sexual Violence Persons Act commitment which was roughly five to six years later. And what did they say? So Mr. Sambridge was not made aware that there was communications between the prosecutor and the judge prior to sentencing which would have suggested that the sentence had already been decided on. What did they say? What were the documents? The documents were filled in sentencing reports which had a fax stamp on them. And I believe that they're in my appendix. I blank on the details of those reports. But the issue and why we brought that up there goes to the closing argument issue which was that this court, the Illinois appellate court, although it did do a plain error analysis of the improper closing argument statements, it was an unreasonable determination based on the fax because it was not taken in light of the evidence as a whole. And that was a portion of the evidence which should be taken and noted as to why there was impropriety on behalf of the prosecutor throughout the entire trial, not just in the closing argument. If there are no more questions on this issue, I reserve the rest of my time for rebuttal. Ms. O'Connell. May it please the Court. Assistant Attorney General Erin O'Connell on behalf of the Respondent. Based on counsel's statement that Petitioner is not seeking to construe the petition as an attack on his civil custody, the Court should plainly affirm the district court's determination that it lacked jurisdiction under 2254. The sentence here, as I believe Petitioner has conceded, has been fully discharged. And under Mayling v. Cook, that's dispositive. Once a sentence is discharged, it can no longer be attacked in its own right. Ms. O'Connell, did the State courts wind up ruling on this issue of prosecutorial misconduct in the closing argument? They did. The Illinois Appellate Court addressed it. It was actually a defaulted issue, which is an issue that I want to get to. So the Court looked at whether it was plainly erroneous for the Court to allow the prosecutor to make the argument. And in the course of doing so, the Court resolved the ultimate issue in a prosecutorial misconduct case under Darden, which would be were the statements so egregious as to infect the entire trial with error of constitutional dimensions. And in resolving that plain error issue, the Court did adjudicate on the merits the claim that Petitioner is bringing here. So that would be a merits adjudication subject to 2254D. But before the Court even should get to that, it should deny relief on the basis that the claim is procedurally defaulted. As we set forth in our brief, he failed to raise the issue in the post-trial motion. In the Appellate Court, he even conceded that that resulted in a forfeiture of his claim, and he expressly asked the Court to look at the claim solely for plain error. There was a remand, right, for a new trial on the criminal conviction, right? Yes. Okay. And what happened after that second conviction? That's what's at issue here. So he was convicted first, and then his conviction was reversed because of the admission of some hearsay testimony. So it was remanded for the new trial. In the new trial that took place, this is where his claim is based on the closing argument. I think one issue that needs to be addressed is the collateral consequences issue. There was a — I believe Petitioner's definition here that a collateral consequence has a negligible effect is based on some dictum that was in Beersneaks. I don't read Beersneaks to be purporting to define for all circumstances  The Court properly construed the consequence at issue there, which is a sex offender registration requirement, as a consequence that has negligible effects and is collateral. But it didn't adopt a broader interpretation that we should rely on here to say, because there is more than negligible effects on his liberty, this is a consequence that is not collateral. And there's case law that we pointed out in our brief where consequences are collateral, but they clearly have severe restrictions on an individual's liberty. There's a line of cases that say that immigration proceedings pursuant to a criminal conviction where they seek deportation, that's a collateral consequence. That's plainly not a negligible effect of the conviction. There is case law also saying that civil custody in the form of a sexually violent person's determination is a collateral consequence to a conviction. Those are the cases that should guide the Court's analysis in finding that. Here the sentence was fully discharged. The consequence at issue here, the civil commitment, is collateral to the conviction, and therefore by itself does not suffice to confer jurisdiction on the district court. If the Court has no further questions, we would ask that the Court affirm the judgment of the district court denying habeas relief. Ms. Rodin. Your Honor, as to the Versnick's issue, in that case, they specifically decided that the definition of a collateral consequence was something that had a negligible effect on a defendant's physical liberty of movement and offered a plethora of case law defining what a collateral consequence was, including fines, sex offender registration, suspension of a driver's license, and what a collateral consequence wasn't, which the Third Circuit has even found that 300 hours of community service over a three-year period was not a collateral consequence and could render someone in custody. So surely Mr. Sandbridge's indefinite civil commitment under the Sexually Violent Persons Commitment Act is more than a negligible effect on his liberty and is more than a collateral consequence. Finally, this case is distinguishable from Millang v. Cook because that was a sentencing enhancement case. And in that case, the Court specifically said that the potential for an earlier sentence to enhance a second sentence wasn't enough to render that Petitioner in custody. However, here, there was more than just a potential for the initial sentence to enhance the second. The initial sentence had to exist in order for Mr. Sandbridge to be committed under the Sexually Violent Persons Act. For the following reasons, we'd ask that this Court reverse the decision of the District Court and find that Mr. Sandbridge was in custody under 2254. Thank you. Thank you, Ms. Boudin. Thanks to all counsel. And an additional thanks, Mr. Palmer, to you and Ms. Boudin for representing Mr. Sandbridge in this case. The case is taken under advisement.